IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

**MARIO DUARTE,** a Resident of Florida,

    Plaintiff,

v.                                                                                  Case No.: ----

**AAA COOPER TRANSPORTATION, INC.,** a Foreign For-Profit Corporation.

    Defendant.

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, MARIO DUARTE (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby sues the Defendant, AAA COOPER TRANSPORTATION, INC. (hereinafter "Defendant"), and states as follows:

### NATURE OF THE ACTION

1. This is an action for recovery of damages by Plaintiff against Defendant for disability discrimination and failure to accommodate pursuant to the Florida Civil Rights Act.

### PARTIES

2. Plaintiff is a resident of the state of Florida, domiciled in Seminole County, Florida.

3. Defendant is a for-profit corporation which is incorporated in the state of Georgia, is registered to do business in the State of Florida, and which has offices and conducts operations in Orange County, Florida at the address of 11425 United Way, Orlando, FL 32824, which is the location in which the Plaintiff reported to.

4. All of the actions occurring under this Complaint occurred in Orange County, Florida.

5. At all times material hereto, Defendant was Plaintiff's employer.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter for damages which are in excess of $50,000, exclusive of interest, costs, and attorney's fees.

7. This Court has jurisdiction over this matter pursuant to §48.193, *Florida Statutes*.

8. The acts and omissions that give rise to this action occurred in Orange County, Florida.

9. Venue is properly held in Orange County, Florida pursuant to §47.011, *Florida Statutes*.

10. All conditions precedent and administrative processes for the filing of this Complaint have been either performed or waived.

## FACTUAL ALLEGATIONS

11. Plaintiff was hired by Defendant on or around October 20, 2021.

12. Plaintiff's position was that of a truck driver for Defendant.

13. Plaintiff operated his vehicle and made deliveries in and around the Greater Orlando area.

14. Defendant has local deliveries, as well as volume runs available for its truck drivers.

15. Drivers are dispatched and provided with their routes by Defendant.

16. Drivers are required to verify the cargo that they have on their trucks.

17. Drivers are required to load cargo onto their trucks.

18. Some drivers are required to remove cargo from their trucks as they make deliveries.

2

19. Defendant has equipment, such as pallet jacks and hand trucks, which can be used to assist drivers in deliveries and loading upon request.

20. Plaintiff has a back injury which he sustained prior to his employment with Defendant.

21. Plaintiff was constantly ridiculed about his back by management of Defendant.

22. Plaintiff was subjected to comments by management which questioned whether he was cut out to be a truck driver with his back.

23. Due to his back, Plaintiff was on intermittent protected Family Medical Leave ("FML") under the Family Medical Leave Act ("FMLA").

24. Plaintiff used his FML to attend appointments and receive treatment for his back.

25. When Plaintiff would need to use his FML, he was criticized and scrutinized by management.

26. Plaintiff's taking of FML only increased the harassment he suffered.

27. Plaintiff was constantly one of the only employees subject to "blowouts."

28. "Blowouts" occur when cargo, which is to be checked and loaded, is intentionally scattered and unorganized, necessitating that the driver reorganize the cargo by picking it up and moving it around to ensure that it is in the correct order.

29. Plaintiff was constantly required to repack and reorder his cargo because of the blowouts.

30. Other employees recognized what was going on and would attempt to help Plaintiff fix these blowouts.

31. Other employees who would attempt to assist Plaintiff would be yelled at by management, and would dissuade others from giving him assistance.

32. Plaintiff asked for a reasonable accommodation in the form of utilizing an electric pallet jack to help load and unload.

33. Plaintiff was informed by management that they "had nothing like that" and that all electric pallet jacks were reserved.

34. Plaintiff asked for a reasonable accommodation in the form of volume deliveries, where breakdowns and blowouts would not be an issue.

35. Defendant informed Plaintiff that he could not have these sort of deliveries.

36. Plaintiff consistently asked over the course of the next four weeks, knowing that these sort of deliveries were available and there was an opening for that sort of delivery.

37. Defendant got frustrated with Plaintiff asking for these deliveries and eventually gave him some.

38. While Plaintiff was given these deliveries, he was constantly assigned to delivery locations which were far away, and the number of deliveries he was given each day were large.

39. Because Plaintiff had numerous long-distance deliveries, it made it difficult to complete all deliveries in a single day, and Plaintiff was being pushed to the limit of the number of hours he could legally drive in one day.

40. Defendant ultimately did not attempt to engage in the interactive process with Plaintiff.

41. Defendant did not offer any accommodations to assist Plaintiff.

42. Eventually, Plaintiff had to undergo a radiofrequency ablation ("RFA") to kill the nerve in his back in an attempt to manage his pain.

43. Defendant was aware of Plaintiff's back injury.

44. Defendant was aware that Plaintiff needed to undergo surgery.

4

45. Plaintiff had conversations about his back with management, dispatchers, and with human resources.

46. Defendant was aware of the pain that Plaintiff had in his back.

47. Plaintiff had conversations about his pain with management, dispatchers, and with human resources.

48. Plaintiff used FML to complete his RFA and recover.

49. After his RFA, Plaintiff provided a note to Defendant with his restrictions.

50. Plaintiff's restrictions were no excessive bending and no lifting over 30 lbs.

51. Plaintiff was immediately sent home by Defendant and told he could not be accommodated as he weighed more than 30 lbs. and could not "lift" himself into the truck.

52. Defendant did not engage with Plaintiff in the interactive process.

53. Plaintiff attempted to point out that lifting and climbing are two different things, but Defendant would not listen or engage with Plaintiff.

54. Over the next four months, Plaintiff would call, text, email, and even showed up at Defendant's location to try and begin working again.

55. Plaintiff was denied the ability to work.

56. Plaintiff was constantly asked if his "restriction was off yet."

57. Plaintiff was constantly told that "trucking is not for you, go find another career."

58. Frustrated, Plaintiff was required to return to his doctor and ask for the restrictions to be lifted.

59. Plaintiff's doctor was reluctant, but knew that Plaintiff needed to work so he lifted the restrictions with the express requirement that if he began to feel pain again that Plaintiff immediately return to his doctor.

60. Plaintiff informed Defendant that his restrictions had been lifted.

61. Defendant sent Plaintiff for a DOT physical, despite his DOT physical status being current.

62. Plaintiff went for his DOT physical and the results were provided to Defendant.

63. Upon his return, Plaintiff was told that his route had been given to someone else and that he would be used for various routes at management's discretion.

64. Plaintiff was assigned less routes than he normally would receive, and this translated into less hours that he was scheduled for.

65. Plaintiff would attempt to make up the shortfall by picking up unclaimed routes, but management began to tell dispatchers not to assign these routes to Plaintiff.

66. Eventually, Plaintiff only had one dispatcher that would assign him these unclaimed routes.

67. That dispatcher informed Plaintiff that he would continue to assign them when he could as he was aware of what was happening and wanted to try and help Plaintiff.

68. Plaintiff ultimately could not take the harassment and discrimination any longer, and was left with no other alternative than to leave and seek new employment on May 1, 2024.

69. During the time that Plaintiff was being subjected to the above treatment, Plaintiff felt and suffered with severe stress, was diagnosed with anxiety, depression, and PTSD as a result of the treatment he was being subjected to.

70. Plaintiff still receives treatment for these issues as of the filing of this matter.

71. As a result of Defendant's unlawful discrimination against Plaintiff, Plaintiff has suffered damages which include the loss of wages and benefits.

72. Plaintiff has suffered compensatory damages in the form of mental anguish, embarrassment, and depression which has substantially impacted his life.

73. Plaintiff has suffered damages which rise to the level of being punitive, and will be amending to seek an award of punitive damage with the Court's permission.

74. Plaintiff has had to secure the services of Wilson McCoy, P.A. in this matter and is required to pay its reasonable attorneys' fees for services rendered and to be rendered.

## COUNT I - FCRA
## DISABILITY DISCRIMINATION

75. Plaintiff restates and realleges paragraphs 1 through 74 as if fully set forth herein.

76. Plaintiff's condition was a disability as defined by the Florida Civil Rights Act since it substantially limited one or more of Plaintiff's major life activities.

77. Plaintiff was qualified to perform the essential functions of his job, with a reasonable accommodation.

78. But for his actual or perceived disability, or because of his request for a reasonable accommodation, Plaintiff would not have been without work, would not have suffered constant harassment, been subject to blowouts, or forced to quit.

79. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorney's fees and costs.

80. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

81. Plaintiff suffered emotional pain and mental anguish as a direct result of Defendant's unlawful discrimination.

82. Plaintiff has suffered pecuniary losses as a direct result of Defendant's unlawful discrimination.

83. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including but not limited to:

a) Back pay and benefits;

b) Interest in back pay and benefits;

c) Front pay and future benefits;

d) Compensatory damages for emotional damages;

e) Other non-pecuniary damages;

f) Injunctive relief;

g) Attorneys' fees and costs, and

h) For such other relief this Court deem just and equitable.

## COUNT II - FCRA
## FAILURE TO ACCOMMODATE

84. Plaintiff restates and realleges paragraphs 1 through 74 as if fully set forth herein.

85. Plaintiff's condition was a disability as defined by the Florida Civil Rights Act since it substantially limited one or more of Plaintiff's major life activities.

86. Plaintiff was qualified to perform the essential functions of his job, with a reasonable accommodation.

87. Plaintiff asked for a reasonable accommodation. However, Defendant refused to engage in the interactive process.

88. But for his actual or perceived disability, or because of his request for a reasonable accommodation, Plaintiff would not have been without work, would not have suffered constant harassment, been subject to blowouts, or forced to quit.

8

89. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorney's fees and costs.

90. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

91. Plaintiff suffered emotional pain and mental anguish as a direct result of Defendant's unlawful discrimination.

92. Plaintiff has suffered pecuniary losses as a direct result of Defendant's unlawful discrimination.

93. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including but not limited to:

a) Back pay and benefits;

b) Interest in back pay and benefits;

c) Front pay and future benefits;

d) Compensatory damages for emotional damages;

e) Other non-pecuniary damages;

f) Injunctive relief;

g) Attorneys' fees and costs, and

h) For such other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Dated this 16th day of October 2025.

                                    Respectfully submitted,

                                    */s/Paul L. Sutherland*___
                                    Paul L. Sutherland, Esq.
                                    Florida Bar No. 1008093
                                    WILSON MCCOY, P.A.
                                    932 N. Maitland Ave
                                    Maitland, Florida 32751
                                    Telephone: (407) 803-5400
                                    Facsimile: (407) 803-4617
                                    E-Mail: psutherland@wilsonmccoylaw.com
                                    Secondary: rlopez@wilsonmccoylaw.com

                                    **Attorney for the Plaintiff**